## UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>     *Plaintiff*,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>     *Defendant*. | Case No. 26-422C<br><br>Hon. Philip S. Hadji |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNTS I – III)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    DOT BREACHED THE SAS2 AGREEMENT BY WITHHOLDING $52,847,277.00
        IN SUBMITTED REIMBURSEMENT REQUESTS. ....................................................... 2

    II.   DOT ALSO BREACHED THE SAS2 AGREEMENT BY WITHHOLDING
        $5,796,161.10 IN UNSUBMITTED REIMBURSEMENT CLAIMS. ............................. 4

    III.  THE COURT SHOULD ENTER PARTIAL FINAL JUDGMENT FOR THE MTA
        IN THE AMOUNT OF $58,643,438.10. ........................................................................ 8

CONCLUSION................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**

*Gateway Dev. Comm'n v. United States*,
__ Fed. Cl. __, 2026 WL 730764 (Mar. 12, 2026)............................................................ 1, 2, 3, 7

*Hamilton Square, LLC v. United States*,
177 Fed. Cl. 146 (2025) ........................................................................................................ 6

*Hometown Fin., Inc. v. United States*,
409 F.3d 1360 (Fed. Cir. 2005) ............................................................................................ 3

*Loc. Initiative Health Auth. for L.A. Cnty. v. United States*,
145 Fed. Cl. 746 (2019) ........................................................................................................ 9

*Love v. McDonough*,
106 F.4th 1361 (Fed. Cir. 2024) .......................................................................................... 3

*Metro. Transp. Auth. v. Duffy*,
2026 WL 588117 (S.D.N.Y. Mar. 3, 2026) .......................................................................... 3

*Padilla v. United States*,
58 Fed. Cl. 585 (2003) .......................................................................................................... 7

*Park Props. Assocs., L.P. v. United States*,
82 Fed. Cl. 162 (2008) .......................................................................................................... 6

*RT Computer Graphics, Inc. v. United States*,
44 Fed. Cl. 747 (1999) .......................................................................................................... 6

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*,
833 F.2d 1560 (Fed. Cir. 1987) ............................................................................................ 7

*United States ex rel. Culpepper v. Birmingham Jefferson Cnty. Transit Auth.*,
584 F. Supp. 3d 1050 (N.D. Ala. 2022)................................................................................ 4

**RULES**

RCFC 54(b)............................................................................................................................ 8

RCFC 56(d)............................................................................................................................ 7

**REGULATIONS**

2 C.F.R. § 200.300(a).................................................................................................................. 3

2 C.F.R. § 200.300(c).................................................................................................................. 3

2 C.F.R. § 200.340 ..................................................................................................................... 3

**OTHER AUTHORITIES**

*ECHO-Web User Guide* (Oct. 3, 2025),
    https://www.transit.dot.gov/sites/fta.dot.gov/files/2026-02/ECHO-Web-User-Guide-
    Version-5.1.pdf. ..................................................................................................................... 4

FTA Master Agmt. § 1(c) ............................................................................................................ 3

FTA Master Agmt. § 3(h)(2)(iii). ............................................................................................ 2, 3

FTA Master Agmt. § 7................................................................................................................ 4, 5, 6

FTA Master Agmt. § 9(c)(1)........................................................................................................ 3

Plaintiff the Metropolitan Transportation Authority ("MTA") respectfully submits this memorandum of law in further support of its motion for an order granting partial summary judgment on Counts I through III of its Complaint (ECF 1) and final judgment in the amount of $58,643,438.10.  ECF 13 ("Pl. Mot.").[1]

## PRELIMINARY STATEMENT

The Opposition confirms that at this point given the briefing, there is very little in dispute and very little left to do in this case.  DOT does not really dispute that it breached the FFGA by withholding $58,643,438.10 in urgently needed federal funding for the Project.  Remarkably, DOT does not even engage with—let alone rebut—the MTA's contention that the FFGA and governing regulations impose strict limits on DOT's ability to withhold funding, and that DOT violated those limits here.  Instead, DOT pivots to claiming that because it possesses general oversight authority (which it does), it "should be allowed a reasonable period to complete its review"—a review of facts and issues that remain a mystery to the MTA and that has already lasted more than six months with no end in sight.  ECF 16 at 5 ("Opp.").  But as this Court held in *GDC*—a decision the Opposition completely ignores—the issue is not whether DOT gets sufficient time for "review." *Gateway Dev. Comm'n v. United States*, __ Fed. Cl. __, 2026 WL 730764 (Mar. 12, 2026) (Hertling, J.) ("*GDC*").  The plain language of the FFGA and the applicable regulations "set out a specific process DOT must follow *before* it suspends disbursements," as DOT did here.  *Id.* at *14 (emphasis in original).  DOT is free to conduct its review (whatever it may be), but that does not give DOT the right to withhold payments.

DOT separately argues that the MTA is not entitled to $5.8 million, the amount that the MTA would have requested but for DOT disabling its access to the ECHO-Web payment portal,

---

[1] Unless otherwise indicated, all defined terms have the meaning set out in the MTA's opening brief.  ECF 13.

purportedly because the MTA has not provided supporting documentation.  But the MTA is not required to provide the documentation that DOT now demands.  Indeed, with respect to the $52.8 million in requests submitted through the ECHO-Web payment portal that DOT does not challenge, no such documentation was provided.  Under the FFGA and the governing regulations, the MTA has provided all of the information for the three February reimbursement requests totaling $5,796,161.10, and the only reason that amount is any different is that DOT prevented the MTA from submitting those requests through the payment portal.  DOT's vague demands for document discovery and "witness testimony" similarly go far beyond the streamlined reimbursement process set out in the parties' contract.

## **ARGUMENT**

**I.    DOT BREACHED THE SAS2 AGREEMENT BY WITHHOLDING $52,847,277.00 IN SUBMITTED REIMBURSEMENT REQUESTS.**

As we explained in our opening brief, *see* Pl. Mot. at 5-7, 18-20, and Judge Hertling held in *GDC*, the FFGA and governing regulations "establish a structured, orderly process for suspending or otherwise withholding the disbursement of funds," one that requires DOT to "follow a 'ready, aim, warning shot, aim again, fire' sequence" before it may pause funding.  *GDC*, 2026 WL 730764, at *14.  The Opposition ignores those provisions, that process, and Judge Hertling's decision.  That is not surprising: DOT does not—and cannot—claim that it satisfied these requirements, *see* Opp. at 3-5, so it is a lost cause for DOT to try to argue otherwise.

Instead, DOT seeks refuge in Section 3(h)(2)(iii) of the FTA Master Agreement, which confers general authority "to conduct oversight of the Recipient's … compliance with federal requirements for … procurement … management and finance."  Opp. at 4 (quoting same).  But Judge Hertling has already rejected this argument, and for good reason.  *See GDC*, 2026 WL 730764, at *16.  The MTA is not contesting DOT's general oversight authority—indeed, as DOT

2

concedes, the MTA has promptly complied with all information requests to date. Opp. at 4; *see also* Pl. Mot. at 8-12; Compl. ¶¶ 69-75. "[The MTA] is alleging that DOT failed to follow the specific procedural requirements set forth in the [SAS2 Agreement], to which it had agreed, before suspending reimbursements to [the MTA]" and thereby "bypassed the contractual procedural requirements and breached the contracts." *GDC*, 2026 WL 730764, at *16.

None of the generic provisions cited by DOT purport to modify its payment obligations or the specific process the parties agreed to before any suspension or withholding of payments could take place. *See* FTA Master Agmt. § 1(c) ("may take enforcement action"); *id.* § 3(h)(2)(iii) ("conduct oversight"); *id.* § 9(c)(1) ("audit records"); 2 C.F.R. § 200.300(a) ("manage and administer the Federal award"); *id.* § 200.300(c) ("take account of the heightened constitutional scrutiny that may apply under the Constitution's Equal Protection guarantee"); *see also Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1369 (Fed. Cir. 2005) ("Our precedent establishes as a principle of contract interpretation that a specific contract provision will control over a general contract provision."); *Love v. McDonough*, 106 F.4th 1361, 1368 (Fed. Cir. 2024) (a specific regulation "takes precedence over a more general one").

Likewise, the termination provisions cited by DOT (Opp. at 4-5) do not purport to affect DOT's payment obligations, have not been invoked by DOT, and could not properly be invoked in any case. *See* Opp. at 4 n.3 (conceding "[t]his grant has not been terminated"); *see also Metro. Transp. Auth. v. Duffy*, 2026 WL 588117, at *47-54 (S.D.N.Y. Mar. 3, 2026) (rejecting DOT's attempt to invoke 2 C.F.R. § 200.340 in light of the MTA's strong reliance interests, among other reasons).

## II.     DOT ALSO BREACHED THE SAS2 AGREEMENT BY WITHHOLDING $5,796,161.10 IN UNSUBMITTED REIMBURSEMENT CLAIMS.

As DOT concedes, since January 29, 2026, it has prevented the MTA from submitting reimbursement requests by disabling the MTA's access to the ECHO-Web portal in violation of the FTA Master Agreement. Opp. at 8; Pl. Mot. at 20 (citing FTA Master Agmt. § 7(f)(6)(i)). Rather than defend its conduct, DOT blames the MTA for not "submit[ing] evidence proving that the reimbursement requests it would have submitted" are "eligible." Opp. at 6. But this too disregards the governing agreement and regulations and the reimbursement process established under them.

The ECHO-Web reimbursement "process [is] simple": it does not require the MTA "to certify compliance with federal statutes or FTA rules or regulations," nor does it require "any other representations about the goods and services" obtained with the funds. *United States ex rel. Culpepper v. Birmingham Jefferson Cnty. Transit Auth.*, 584 F. Supp. 3d 1050, 1056-57 (N.D. Ala. 2022). To complete and submit a reimbursement request, the MTA must provide: (1) the grant recipient's name; (2) the request date; (3) the project number; and (4) the drawdown amount. Fed. Transit Admin., *ECHO-Web User Guide* § 4.2 (Oct. 3, 2025).[2] That is all that is required to create a reimbursement request like those submitted prior to January 29, 2026, which DOT concedes were properly submitted. Opp. at 3. And once a reimbursement request is created through ECHO-Web, DOT is obligated to make payment in connection with that request within 30 days, subject to certain limitations that DOT has not invoked here. Pl. Mot. at 5-7, 18-20; *see also* FTA Master Agmt. ¶ 7(f).

---

[2] Available at https://www.transit.dot.gov/sites/fta.dot.gov/files/2026-02/ECHO-Web-User-Guide-Version-5.1.pdf. The *ECHO-Web User Guide* is incorporated by reference into the FTA Master Agreement. *See* FTA Master Agmt. § 7(f). The ECHO-Web portal also uses pre-filled "drop-down" boxes to identify the project scope, and asks whether the award is a TEAM grant. *ECHO-Web User Guide* at 19, 25. As DOT is aware, this is not a TEAM grant. *See* ECF 1-9 through ECF 1-43 (identifying grant as a TrAMS grant).

It is undisputed the MTA would have provided this information for the three February requests through the ECHO-Web payment portal if its access to the Project through the portal had not been shut down by DOT.  Patel Decl. ¶ 12 ("[T]he MTA would have submitted the following requests for reimbursement in substantially the same form as the reimbursement requests that it submitted prior to the September 30 Letter which were paid by DOT …[.]").  In fact, because its access to the portal was blocked, the MTA did provide the information to DOT by letter on February 25, 2026, ECF 13-3 at 3, and in its Complaint and summary judgment papers, Compl. ¶¶ 113-114; Pl. Mot. at 14, 20-22; Patel Decl. ¶ 12.

### February 6, 2026 Request for $97,432.65

| ECHO-Web Form Field | Input | Citations |
|---|---|---|
| Recipient Name | Metropolitan Transportation Authority | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13-3 at 1 |
| Request Date | February 6, 2026 | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13 at 14 |
| Project Number | NY-2023-106-01 | ECF 1-45<br>ECF 13-2<br>ECF 13-3 at 1 |
| Requested Amount | $97,432.65 | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13 at 14 |

### February 9, 2026 Request for $2,147,897.83

| ECHO-Web Form Field | Input | Citations |
|---|---|---|
| Recipient Name | Metropolitan Transportation Authority | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13-3 at 1 |
| Request Date | February 9, 2026 | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13 at 14 |
| Project Number | NY-2023-106-01 | ECF 1-45<br>ECF 13-2<br>ECF 13-3 at 1 |
| Requested Amount | $2,147,897.83 | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13 at 14 |

**February 10, 2026 Request for $3,550,830.62**

| ECHO-Web Form Field | Input | Citations |
|---|---|---|
| Recipient Name | Metropolitan Transportation Authority | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13-3 at 1 |
| Request Date | February 10, 2026 | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13 at 14 |
| Project Number | NY-2023-106-01 | ECF 1-45<br>ECF 13-2<br>ECF 13-3 at 1 |
| Requested Amount | $3,550,830.62 | Compl. ¶ 113<br>Patel Decl. ¶ 12<br>ECF 13 at 14 |

The FTA Master Agreement makes clear that DOT does not review drawdowns at the time of submission; instead, it may conduct audits after payment. Section 7 provides that because "the Recipient is authorized to receive payments provided through ECHO-Web, [DOT] does not generally review the drawdown when made"; rather, DOT reserves the right to "review the drawdown at a later time, and subject that drawdown to an audit under a financial oversight review, a triennial review, or another audit." FTA Master Agmt. § 7(f)(7). That is reinforced by the parties' course of conduct, in which DOT routinely paid the MTA just one day after the MTA submitted a request for reimbursement based on precisely the kind of information outlined above. Compl. ¶¶ 55-57.[3]

Accordingly, the MTA is not and has never been required to submit "business records" or otherwise "prove" the eligibility of the costs claimed when submitting a reimbursement request. *Contra* Opp. at 6. DOT cites Section 7(b) of the FTA Master Agreement, Opp. at 5-6, but that section only defines "eligible costs," it does not establish the requirements for how and when

---

[3] DOT also points to Section 7(a), which requires recipients to "file a properly signed document seeking payment" with a "description of the relationship" between the expense and the award. Opp. at 5. But that is just an ECHO-Web reimbursement request. Compl. ¶¶ 53-54 (DOT has made payments on 95 requests for reimbursement submitted through the ECHO-Web system since January 5, 2024).

6

reimbursements are made or impose a condition precedent to DOT's payment obligation, which is governed by other provisions. Pl. Mot. at 5-7, 14, 20-21; *see Hamilton Square, LLC v. United States*, 177 Fed. Cl. 146, 155 (2025) ("Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language.") (quoting *RT Computer Graphics, Inc. v. United States*, 44 Fed. Cl. 747, 756 (1999)).

Fundamentally, DOT is attempting to use the fact it disabled ECHO-Web to increase the burden on the MTA. The prevention doctrine, however, exists precisely to prevent this type of gamesmanship: "a party should not be able to take advantage of his own wrong." *Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 173 n.14 (2008) (citation omitted). If DOT had not prevented the MTA from accessing ECHO-Web, the MTA would have submitted its reimbursement requests in the form required, as it has done more than 100 times since it submitted its first request on January 5, 2024. *See* Compl. ¶¶ 39-40, 53-54; Patel Decl. ¶ 12.[4]

As for DOT's request for discovery under Rule 56(d), it should be denied. First, DOT has not provided the affidavit required by Rule 56(d). *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1567 (Fed. Cir. 1987) ("A party may not simply assert in its brief that discovery was necessary … when it failed to comply with the requirement of Rule 56([d]) to set out reasons for the need for discovery in an affidavit."). Second, DOT has not described with "precision" how "the evidence it hopes to obtain … would likely disclose issues of material fact." *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003) (emphasis added). While DOT claims it

---

[4] As the Chief Financial Officer of the MTA, Ms. Patel is competent to testify that the MTA would have submitted the February reimbursement requests if its ECHO-Web access had not been disabled. Patel Decl. ¶ 1; *see* RCFC 56(c)(4). The best evidence rule does not apply because the declaration does not describe a reimbursement request, given that DOT prevented the MTA from creating any such request. Similarly, the declaration is not hearsay because it describes actions the MTA would have taken but for DOT's efforts to prevent performance. *Contra* Opp. at 6. In all events, the MTA also submitted the information in the declaration to DOT by letter on February 25, 2026, ECF 13-3, and in its Complaint, ECF 1; *see also Ecological Rights Found. v. EPA*, 541 F. Supp. 3d 34, 51 (D.D.C. 2021) (summary judgment "evidence need not be in a form that would be admissible at trial, so long as it is capable of being converted into admissible evidence" (citation omitted)).

"*might*" require discovery "to determine when MTA likely would have submitted these alleged requests," that information is already in the record.  Opp. at 8 (emphasis added); *see Padilla*, 58 Fed. Cl. at 593 (Rule 56(d) does not allow "discovery merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support" an opposition) (internal quotation marks omitted).  DOT cannot retroactively justify its funding suspension by hoping for some evidence of noncompliance on the MTA's part—again, the FTA Master Agreement makes it clear that DOT does not review drawdowns at the time of submission, but may conduct audits after payment has been made.  *See supra* at 6; *GDC*, 2026 WL 730764, at \*16 n.10 (rejecting 56(d) request because "[t]he issue is not whether [the MTA] complied with federal law; the issue is whether DOT provided [the MTA] with the process due under the agreements").

### III.    THE COURT SHOULD ENTER PARTIAL FINAL JUDGMENT FOR THE MTA IN THE AMOUNT OF $58,643,438.10.

DOT does not identify any reason to delay entry of final judgment on Counts I – III.  Since September 30, 2025, DOT has unlawfully withheld $58,643,438.10 in obligated funds for the Project.  To cover the shortfall, the MTA has been forced to divert critical transportation infrastructure funding from its 2015-2019 and 2020-2024 Capital Plans, funds which are intended to address other priorities, including making 70 subway stations ADA accessible, upgrading police facilities and fire safety systems, replacing aging subway cars and buses, and increasing the size of the Long Island Rail Road electric fleet.  Compl. ¶¶ 124, 126-28.  The current situation is unsustainable, and absent judicial relief in the near term, the steady progress on the Project will come to a halt, jeopardizing the jobs of the many workers SAS2 employs and imposing additional consequential damages on the MTA.

While DOT claims that the Court can "provide the clarity and certainty that MTA seeks … without entering a partial final judgment," Opp. at 9, its own conduct proves otherwise.  DOT has

8

never had any basis—contractual or otherwise—to justify its refusal to disburse the outstanding funds. Its unspecified and opaque "review" has now lasted more than six months without any indication when it might come to an end. That alone makes it perfectly clear that DOT will not comply with its obligations absent a court order. In the Gateway Development Commission matter, which involves near identical issues, payments only resumed after a court intervened. *New Jersey v. U.S. Dep't of Transp.*, 2026 WL 323341, at *4 (S.D.N.Y. Feb. 6, 2026). Indeed, despite having the benefit of Judge Hertling's *GDC* decision establishing that the funding suspension violates the FFGA, DOT has nonetheless refused to resume payments to the MTA.

DOT also contends that partial final judgment should be withheld because some claims "will remain after the Court resolves the present motion." ECF 16 at 8. But that is true any time a court enters partial final judgment. Rule 54(b) expressly provides that the Court may "direct entry of a final judgment as to one or more, but fewer than all, claims … if the court expressly determines that there is no just reason for delay." RCFC 54(b).

Finally, DOT ignores the substantial, non-compensable harm that delay will cause the MTA. While DOT does not dispute that interest is unavailable in this case, it argues that "if the mere unavailability of interest in this case … means there is 'no just reason' for delay, then the Court risks partial final judgments becoming routine, rather than an exception in special cases." Opp. at 9. But the MTA did not condition its request for partial final judgment on the "mere unavailability of interest." To the contrary, it is "the magnitude of the undisputed amount" owed by DOT that underscores the need for partial final judgment here. *Loc. Initiative Health Auth. for L.A. Cnty. v. United States*, 145 Fed. Cl. 746, 751 (2019). It would be manifestly unjust to delay payment further while simultaneously denying "interest on the over $17 million in damages which [the government] unquestionably owes." *Id*. at 751. That logic applies with even greater force

9

here given that DOT has withheld over $58 million from the MTA, more than triple the amount at issue in *Local Initiative*.

## **CONCLUSION**

For these reasons, the Court should grant summary judgment to the MTA on Counts I – III and enter final judgment for the MTA on Counts I – III in the amount of $58,643,438.10.

Dated: April 13, 2026          Respectfully submitted,
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
KAPLAN MARTIN LLP
1133 Avenue of the Americas | Suite 1500
New York, NY 10036
Tel.: (212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com

*Attorneys for Plaintiff*

10