IN THE UNITED STATES COURT OF FEDERAL CLAIMS

METROPOLITAN TRANSPORTATION      )
AUTHORITY,                       )
                                 )
            Plaintiff,           )
                                 )        No. 26-422C
     v.                          )        (Judge Hadji)
                                 )
THE UNITED STATES,               )
                                 )
            Defendant.           )

JOINT PRELIMINARY STATUS REPORT

Pursuant to the Court's Case Management Procedure at Appendix A of the Rules of the United States Court of Federal Claims (RCFC), plaintiff, Metropolitan Transportation Authority ("MTA"), and defendant, the United States, respectfully submit this joint preliminary status report. We respond to the questions from Appendix A below.

A.    **Does the court have jurisdiction over the action?**

Plaintiff's Position: The Court has jurisdiction pursuant to 28 U.S.C. § 1491(a)(1).

Defendant's Position: The Government believes that the Court lacks jurisdiction to entertain MTA's claims for the lost time-value of money, including "$800,000 in lost investment income," and for pre-judgment interest. ECF No. 32.

B.    **Should the case be consolidated with any other case and, if so, why?**

No.

C.    **Should trial of liability and damages be bifurcated and, if so, why?**

Plaintiff's Position: The Court should bifurcate liability and damages "to secure the just, speedy, and inexpensive determination" of this action. RCFC 1; *see also* RCFC 42(b)-(c)(1). The parties should proceed directly to summary judgment on liability, based on the undisputed facts and the plain language of the Full Funding Grant Agreement ("FFGA"), while conducting limited discovery in parallel on the MTA's damages.

1

Liability can be resolved on the current record.  The MTA's breach of contract claims turn on the plain language of the FFGA and Defendant's admitted failure to disburse funding pursuant to that agreement.  *See* ECF No. 35 ¶ 10.  Defendant's own list of issues in Part H goes only to damages.

Resolving liability now will limit the scope of discovery.  With liability established, discovery would be confined to a single, narrow question: the quantum of the MTA's damages. Absent bifurcation, by contrast, the MTA will be entitled to pursue discovery into the full circumstances of Defendant's breach—including Defendant's political motivations for suspending disbursements and the origin and pretext of the "investigation" Defendant cited to justify them.  *See infra* note 1.

There is another reason to bifurcate.  The Court has been down this road before: the parties fully briefed liability, and the Court stood ready to hear argument and rule expeditiously—until Defendant, on the morning of oral argument, belatedly announced that it would disburse nearly $60 million in past-due payments in an effort to moot the MTA's claims. ECF No. 14; see also Apr. 16, 2026 Electronic Order.  That withholding of funding for the Second Avenue Subway Project Phase 2 ("SAS2")—funding Defendant agreed to provide and on which the MTA has relied through more than two years of ongoing construction—was an open violation of the FFGA.  A liability ruling will clarify the parties' rights, permit the MTA to proceed on SAS2 with certainty, and minimize the risk that Defendant simply withholds funding again whenever it next sees fit.

Defendant's objections fall flat.  *First*, a ruling on liability would not be an "advisory opinion."  Resolving liability before damages is precisely the process contemplated by RCFC 42(b), and this Court routinely orders bifurcation in breach of contract cases.  *See, e.g.*,

*Gilead Sci., Inc. v. United States*, 160 Fed. Cl. 330, 336 (2022); *Stockton E. Water Dist. v. United States*, 109 Fed. Cl. 760, 778 (2013).

*Second*, Defendant's proposed alternative—that the MTA move for summary judgment on all four elements at once—would be less efficient, not more.  Defendant concedes that it "might need to seek leave to conduct limited, directed discovery" under RCFC 56(d) before it could even respond to such a motion, and elsewhere notes that fact discovery may last until May 31, 2027.  That is bifurcation by another name, except that liability briefing would be suspended midstream to allow Defendant to take one-sided discovery, rather than proceeding in parallel with damages discovery, inevitably requiring additional briefing or rebriefing.

*Third*, Defendant's renewed jurisdictional objections are no basis for delay.  As the Court has already explained, "it is inefficient at this early stage to delay this case over a narrow dispute about what monetary relief is available to Plaintiff."  ECF No. 33.

Defendant's Position:

Regarding MTA's proposal to brief "liability" separately from damages, that process could not result in a Court determination of "breach" because MTA proposes to brief only the first three elements of a breach claim (existence of a valid contract, a duty arising out of it, and a breach of that duty), and not the fourth element: damages.  *E.g.*, *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989); *Tulsa Airports Improvements Trust v. United States*, 120 Fed. Cl. 254, 265 n.11 (2015) ("Suffering damages is one of the four essential elements of a breach-of-contract claim.").  At this stage, the Government is unable to concede that MTA has suffered any amount of damages (not even $1), so this proposal, if accepted, would result in the Court determining only three of four elements of a breach claim, resulting in a form of advisory opinion.

We expect that this process, if adopted, would delay the completion of discovery regarding damages to some extent.  It is unclear to us why MTA wants to do this.  MTA appears to believe that a decision on these elements in a vacuum would amount to injunctive relief.  To the contrary, for breach claims, this Court awards only monetary relief.  *E.g.*, *Shafer v. United States*, No. 08-103C, 2008 WL 1992134, at *3 n.8 (Fed. Cl. Feb. 27, 2008) ("[W]hile the Court . . . possesses jurisdiction to award damages for breach of contract, it cannot award punitive damages, declaratory relief not associated with bid protest actions, or injunctive relief.").

We believe it would be most efficient for the Government to conduct discovery regarding damages before the parties brief the entire breach question.  However, if MTA wants to brief the merits of this case soon, without conducting discovery first, MTA should file a motion for summary judgment addressing *all four* elements of its breach claim, including a request for a specific amount of damages, supported by whatever evidence MTA wants to rely on.  At this point, the Government does not know what evidence of damages MTA possesses, or how much money MTA seeks, as MTA has yet to clarify these issues beyond a general demand for categories of damages.  Depending on what evidence of damages MTA provides in support of its motion, the Government may be able to respond promptly, and possibly include a cross-motion along with our response.  Alternatively, depending on what evidence MTA provides, the Government might need to seek leave to conduct limited, directed discovery before responding, pursuant to RCFC 56(d).  Either way, we expect that we could include a renewed motion to dismiss MTA's interest claims for lack of jurisdiction (*see* ECF Nos. 32-33) along with our response to MTA's motion for summary judgment.

Alternatively, if MTA does *not* wish to file a motion for summary judgment addressing *all four* elements of its breach claim soon (before discovery), the parties should complete

4

discovery before anyone files a motion for a decision on the merits — with one caveat.  MTA's interest claims should be addressed by the Court long before the close of discovery, through a renewed motion for partial dismissal for lack of jurisdiction, or alternatively for partial judgment on the pleadings.  *See* ECF No. 32.  If the Government were to prevail on that issue at an early stage, it would preserve the resources of the parties and possibly the Court by reducing potential discovery issues.  For example, the parties might disclose, and depose, witnesses who can testify regarding the proper method for calculating the time-value of money.  An early decision on this issue would also narrow the scope of issues in dispute, which could aid potential settlement efforts.  A renewed motion for partial dismissal could be briefed and decided while the parties are concurrently working on discovery.

The Government believes that MTA's remaining claims (other than interest) will be amenable to resolution through summary judgment, following the close of discovery.  Any issues that remain unresolved after a summary judgment ruling could then proceed to a non-bifurcated trial.

D.    **Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

No.

E.    **In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

The parties do not anticipate seeking either a remand or a suspension.

F.    **Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

No.

G.    **Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?**

<u>Plaintiff's Position</u>:  The MTA intends to file a motion for summary judgment as to liability.  The MTA anticipates that the quantum of its damages can be resolved on the papers following discovery.

<u>Defendant's Position</u>:  As discussed in Part C, the Government intends to file a renewed motion under RCFC 12(b)-(c) targeting MTA's claims for the time-value of money / prejudgment interest.  The Government would prefer to file that motion soon, as detailed in the schedule below after Part L.

For the remaining issues in the case, the Government proposes that after fact discovery is completed, the parties file a joint status report either proposing a schedule for expert discovery, or if expert discovery is unnecessary, a schedule for summary-judgment briefing.  This is outlined in the schedule below, after Part L.

H.    **What are the relevant factual and legal issues?**

<u>Plaintiff's Position</u>:

There are two primary legal issues in this case. The first is whether Defendant breached the FFGA with the MTA by unilaterally suspending reimbursements for the SAS2 construction project without providing advance notice or an opportunity to cure. The second legal issue is whether Defendant breached the duty of good faith and fair dealing under the FFGA by withholding payments for irrelevant and inconsistent reasons, by claiming the withholding was in retribution for the perceived role of New York politicians in a federal government shutdown, by insisting that the MTA comply with an investigation in order to obtain past-due funds that had been unlawfully withheld, and by failing to honor its own commitment to resume reimbursements upon certification by the MTA that it would take actions to ensure Federal funds do not flow to uses inconsistent with Equal Protection principles. Additionally, upon conclusion of this case and entry of judgment in its favor, the MTA intends to seek its attorneys fees for Defendant's bad faith

conduct. Among other things, the legal question posed by such a motion will be whether Defendant acted in bad faith in opposing the MTA's motion for expedited summary judgment despite having the benefit of Judge Hertling's directly on-point decision in *Gateway Development Commission v. United States*, 180 Fed. Cl. 495, 512-15 (2026).

Factually, the only remaining factual issues concern the scope of the MTA's damages. Specifically, the factual issues remaining in this case are the scope of the MTA's damages flowing from lost opportunity costs caused by Defendant's illegal conduct, the scope of increased overhead costs stemming from the MTA's efforts to mitigate the fallout from Defendant's breach of contract, and the amount of the MTA's attorneys fees.[1]

Defendant's List of Relevant Factual and Legal Issues:

I.    Whether the Court possesses jurisdiction to entertain MTA's claims for the time-value of money / prejudgment interest, and alternatively, whether those claims fail as a matter of law. *See* ECF No. 32.

II.    The extent of MTA's alleged "significant overhead costs." *See, e.g.*, Amended Complaint (ECF No. 31), ¶¶ 11, 94, 103.

III.    The extent to which MTA's alleged overhead costs have already been compensated by the Department of Transportation through grant reimbursements for MTA's grant management expenses.

---

[1] To the extent this Court does not bifurcate proceedings, the MTA respectfully reserves the right to seek discovery from Defendant in support of its claims, including but not limited to: (1) Defendant's stated political motivations for suspending disbursements; (2) the individuals, communications, and other materials involved in or relevant to Defendant's decision to suspend disbursements; (3) the "investigation" that Defendant cited as the basis for withholding disbursements, including the origin, scope, and nature of that investigation, and whether it was pretextual; (4) Defendant's decision to disable the MTA's access to ECHO-Web; and (5) Defendant's failure to comply with its own commitment to resume reimbursements upon certification by the MTA that Federal funds were not flowing to uses that are inconsistent with Equal Protection principles.

IV.     Whether MTA can prove *all* elements of a breach claim, including damages.  *E.g.*, *San Carlos Irrigation*, 877 F.2d at 959; *Tulsa Airports*, 120 Fed. Cl. at 265 n.11 ("Suffering damages is one of the four essential elements of a breach-of-contract claim."); *Eden Isle Marina, Inc. v. United States*, 113 Fed. Cl. 372, 496 (2013) ("[A]s with any breach-of-contract allegation, the contractor may only recover for the breach of the implied duty of good faith and fair dealing if it establishes that the government's breach caused it damages."); *Stovall v. United States*, 94 Fed. Cl. 336, 345 (2010) (plaintiff's inability to prove damages "would be decisive, as this court lacks the authority to award nominal damages").

I.      **What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

Plaintiff's Position:  The parties have had initial settlement discussions.  Although the MTA remains open to a negotiated resolution, one does not seem likely at this time.

Defendant's Position:  The parties have had some settlement discussions.  Settlement before the Government receives a claim for a specific amount of "overhead" damages, and supporting evidence, is unlikely.  In the Government's view, a decision on the Government's motion to dismiss MTA's interest claims would remove an obstacle to settlement.  *See* ECF No. 32.  As the case proceeds, the parties may consider alternative dispute resolution.

J.      **Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why? A request for expedited trial scheduling is generally appropriate when the parties anticipate that discovery, if any, can be completed within a 90-day period, the case can be tried within 3 days, no dispositive motion is anticipated, and a bench ruling is sought. The requested place of trial shall be stated. Before such a request is made, the parties shall confer specifically on this subject.**

The case appears amenable to resolution through summary judgment, but if issues remain, the parties are prepared to proceed to trial.  The parties do not seek an expedited trial schedule. The parties are amenable to holding trial at the National Courts building in Washington, D.C.

**K.    Are there special issues regarding electronic case management needs?**

No.

**L.    Is there other information of which the court should be aware at this time?**

The parties anticipate seeking a Fed. R. Evid. 502(d) order incorporating a non-waiver agreement, and a protective order for sensitive business information.

PROPOSED DISCOVERY PLAN

Plaintiff's Proposal:

    a.  Initial disclosures - **October 19, 2026**.

    b.  Summary judgment motion as to liability - **October 19, 2026**.

    c.  Fact discovery completed - **February 22, 2027**.

    d.  Expert discovery, if any, completed - **April 19, 2027**.

    e.  The parties will submit to the Court a joint status report on the status of settlement negotiations, the need for expert discovery, and a proposed schedule for briefing summary judgment as to damages by **February 26, 2027**.

Defendant's Proposal:

We propose two alternative schedules, depending on whether MTA would rather file a motion for summary judgment soon (before discovery) or wait until after discovery.

I.    Defendant's Proposed Schedule for Briefing Summary Judgment Soon

    a.  By September 30, 2026, the parties file either a joint motion, or if they cannot agree, competing motions, for a protective order sufficient to protect any sensitive business information that might be used as evidence in support of MTA's motion for summary judgment.  The Government expects this will allow sufficient time for the Court to enter an appropriate

protective order before October 19, 2026, the next proposed deadline.  The subsequent deadline

hinges on the entry of a protective order beforehand.

b.  By October 19, 2026, MTA files a motion for summary judgment addressing *all four*

elements of its breach claim, including damages.

c.  By November 20, 2026, the Government files its response.  If the Government

responds on the merits (rather than seeking leave to obtain discovery pursuant to RCFC 56(d)),

the Government's response brief will include a cross-motion (if any), and any motions to dismiss

for lack of jurisdiction that the Government wishes to raise at that time (including a renewed

motion to dismiss MTA's interest claim, *see* ECF No. 32).

d.  By December 18, 2026, MTA files a single brief that responds to defendant's cross-

motion and motion to dismiss, and replies in support of MTA's opening motion.  Alternatively, if

the Government filed a motion pursuant to RCFC 56(d), MTA will respond to that motion by

December 18, 2026.

e.   By January 15, 2027, the Government files a reply brief in support of its motion(s).

II.     Defendant's Proposed Schedule for Completing Discovery Before the Parties Brief
        Summary Judgment

On or before September 30, 2026: defendant files a renewed motion for partial dismissal /

partial judgment on the pleadings regarding MTA's claims for the time-value of money /

prejudgment interest (*see* ECF No. 32), with subsequent briefing deadlines per the RCFC.

October 30, 2026: initial disclosures due.

April 30, 2027:  deadline to serve written discovery requests.

May 31, 2027:  deadline to complete fact discovery.

June 15, 2027:  joint status report regarding whether expert discovery is needed, and if not, proposing a schedule for summary-judgment briefing.

As for MTA's proposal to complete fact discovery by February 22, 2027, rather than May 31, 2027, this appears overly optimistic given the broad scope of discovery that MTA might seek.  *See* Part C and footnote 1 in Part H, above.[2]  A February 22, 2027 deadline would also be difficult given Government counsel's obligations in other cases pending before this Court.

Further, attempting to complete depositions with a short deadline in the winter and over the winter holidays is often problematic, with weather and holiday absences contributing to scheduling difficulties.

Additionally, MTA's proposed schedule does not provide sufficient time for expert discovery (if any is needed), including time for any experts to review the evidence after the completion of fact discovery, time for experts to prepare their reports, and time for rebuttal reports.

Finally, we would prefer to avoid having a status report so soon after the last day of fact discovery (as MTA proposes), as that could easily result in the parties having to work on both discovery and the status report during the same period.

---

[2] To be clear, we do not see a need for discovery by either party before the first three elements of MTA's breach claim will be ready for resolution by the Court.  The element that might require discovery is damages.

11

Respectfully submitted,

| | |
|---|---|
| */s/ Roberta A. Kaplan* | BRETT A. SHUMATE |
| Roberta A. Kaplan | Assistant Attorney General |
| D. Brandon Trice | |
| Maximilian T. Crema | PATRICIA M. McCARTHY |
| KAPLAN MARTIN LLP | Director |
| 1133 Avenue of the Americas \| Suite 1500 | |
| New York, NY 10036 | MARTIN F. HOCKEY, JR. |
| Tel.: (212) 316-9500 | Deputy Director |
| rkaplan@kaplanmartin.com | |
| btrice@kaplanmartin.com | */s/ Joshua A. Mandlebaum* |
| mcrema@kaplanmartin.com | JOSHUA A. MANDLEBAUM |
| | Senior Trial Counsel |
| *Attorneys for Plaintiff* | Commercial Litigation Branch |
| | Civil Division |
| | U.S. Department of Justice |
| | P.O. Box 480 |
| | Ben Franklin Station |
| | Washington, DC 20044 |
| | Telephone: (202) 532-5409 |
| | Joshua.A.Mandlebaum@usdoj.gov |
| | |
| | *Attorneys for Defendant* |

Dated:  August 11, 2026